III Lounge, Inc., a Nebraska corporation,
appellant, v. Tyler B. Gaines, Trustee, appellee.
348 N.W.2d 903

Filed May 25, 1984.   No. 83-728.

Donald W. Kleine, for appellant.

David D. Ernst and John H. Cotton of Gaines, Otis, Haggart, Mullen & Carta, for appellee.

Krivosha, C.J., Boslaugh, Hastings, White, Caporale, and Shanahan, JJ.

Per Curiam.

The III Lounge, Inc., plaintiff lessee, appealed the judgment of the district court for Douglas County which denied specific performance of an option to purchase real estate.

The trial court held that the plaintiff had not completed conditions which must be fulfilled before the sale of the property may be effectuated. The trial court specifically referred to the failure of the plaintiff to draft a contract and tender a downpayment within the time specified in the lease as the unfulfilled conditions.

Plaintiff assigns as error the trial court's finding that (1) the downpayment and executed contract were conditions precedent to the exercise of the purchase option, and (2) the plaintiff did not properly attempt to exercise the purchase option in light of the manifest intention by the defendant not to perform.

On March 31, 1972, plaintiff entered into a lease agreement with the defendant for the premises at 1515 Dodge Street in Omaha, Nebraska. The lease was for an initial 5-year period from May 1, 1972, until April 30, 1977. The lease contained a renewal option in paragraph XIX that was exercised by the plaintiff, extending the lease into a second term and until April 30, 1982.

Paragraph XX of the lease contained a provision granting the plaintiff an option to purchase the leased premises. On December 7, 1981, James P. Costello, attorney for the plaintiff corporation, wrote to the defendant, stating that he was representing the plaintiff and was exercising the purchase option by this notice.

On December 10, 1981, Costello wrote a second letter to the defendant, asking for an explanation why the defendant was taking the position that the option to purchase did not exist. In this letter Costello also requested a meeting to agree on contract terms.

Once again, on December 29, 1981, Costello wrote to the defendant and informed him of the exercise of the purchase option. Then on April 29, 1982, the defendant delivered a notice to the plaintiff to quit the premises when the second term of the lease expired. Plaintiff refused to vacate the premises, became a

holdover tenant, and filed this action in September of 1982, requesting specific performance.

The defendant, by affidavit, acknowledged the receipt of the three letters in December 1981, and alleged he had not received (1) any instrument purporting to be a written contract for the real estate, nor (2) any other writing signed by any officer or director of the plaintiff corporation with respect to the purchase of the property, nor (3) any downpayment, other payment, or tender of payment on the purchase price of the real estate.

An action for specific performance is an equitable matter triable de novo on appeal to this court. *Cole v. Hickey*, 215 Neb. 728, 340 N.W.2d 418 (1983).

In reviewing the contract, paragraph XX, the purchase option, reads in part:

> Landlord grants to tenant the exclusive right and option to purchase the demised premises upon the following terms and conditions:

> Said option shall be exercised at any time J.D. ~~during the seventh month preceding the end of the initial term hereof~~ upon giving written notice to the landlord by certified mail, time being of the essence.

> The purchase price of the demised premises under this option shall be $87,500.00. The sum of $3,000.00 paid as rental under this lease agreement shall be credited against said purchase price making a net purchase price of $84,500.00. Upon exercise of said option, the party [sic] shall enter into a contract containing the customary provisions for sale of real estate in the city of Omaha, Nebraska. The tenant shall make a down payment of $1,000.00 upon execution of the contract which shall take place no later than thirty (30) days subsequent to the date upon which landlord shall be notified of the exercise of said option by tenant. The balance of said purchase price shall be paid in cash at closing.

We are first confronted by the issue of whether the downpayment provision and the provision to enter into a contract are conditions precedent to exercising the option contract or, instead, are acts required to be performed as part of the purchase contract.

> [W]here an option contract does not provide for payment of the purchase price at the time of, or coincident with, an optionee's exercise or attempted exercise of the option, or where such contract is silent as to the time of payment, the courts have usually adhered to the view, sometimes referred to as the general rule, that in such circumstances payment is not a necessary requisite to exercise but is instead simply one of the acts required of the optionee in performance of his part of the bilateral contract of purchase and sale which was formed when he communicated to the optionor his election or intention to exercise the option and thereby accepted the optionee's offer.

Annot., 71 A.L.R.3d 1201, 1205-06 (1976). See, also, 77 Am. Jur. 2d *Vendor and Purchaser* § 44 (1975).

In our review of this contract, payment is not a necessary requisite to the exercise of the option. Rather, it is an act required by the lessee (plaintiff) in performance of the contract of purchase which was formed when it communicated to the lessor (defendant) its election to exercise the option.

We reach this conclusion because the condition precedent for the option, simply requiring notice, is set apart in an indented paragraph from the following terms of payment. We are also persuaded by the provision for downpayment, which requires payment not at the time of notice but within 30 days subsequent to the date the landlord was notified of the exercise of the option. Under an option which requires merely that notice be given of the exercise and does not require the payment of the purchase money in order to exercise the option, tender of the

purchase price is generally regarded as something which the buyer is required to do in order to perform a contract to purchase which has previously been made, and not a condition precedent to the formation of a contract. *Horgan v. Russell*, 24 N.D. 490, 140 N.W. 99 (1913). See, also, *Gulf Oil Corporation v. Ferguson*, 509 S.W.2d 1 (Mo. 1974).

As a general rule, where a valid, binding contract exists, which is definite and certain in its terms, mutual in obligation, and free from unfairness, fraud, or overreaching, a court will grant a decree of specific performance as a matter of course or right where the remedy at law is inadequate and specific performance will not be inequitable or unjust. *Panhandle Rehabilitation Center, Inc. v. Larson*, 205 Neb. 605, 288 N.W.2d 743 (1980).

It is also the rule that a party who seeks specific performance must show not only that he has a valid, legally enforceable contract but also that he has substantially complied with its terms by performing or offering to perform on his part the acts which formed the consideration of the undertaking on the part of the defendant. *Panhandle Rehabilitation Center, Inc., supra.*

The letters written by the plaintiff's attorney in December 1981 constitute an unequivocal acceptance of the purchase option and further request a meeting to work out the mechanics for drafting a real estate contract, one of the required acts in the bilateral contract of purchase and sale. We believe the evidence supports the contention of the plaintiff that the option to purchase was exercised and that it attempted to perform any other requirements due on the execution of the contract needed to obtain specific performance.

Defendant next contends a notice to exercise the option sent by the plaintiff's attorney is invalid, absent express authorization. Plaintiff's attorney, Costello, in the letter exercising the option, stated he was representing the plaintiff, and no evidence ex-

ists in the record to show that the defendant questioned the authority of Costello to act for the plaintiff when the option was exercised by notification. This matter was first brought up at the district court level.

Also, in the deposition of Richard D. Benak, Sr., the sole stockholder of the plaintiff corporation in 1981, Mr. Benak believed he had given Costello written power of attorney to act on behalf of the corporation in November 1981. Unfortunately, this document has not been produced. Nevertheless, it is the rule that, ordinarily, the power of the attorney to act for his client in an action is to be considered valid and sufficient until disproved, not void or insufficient until proved. *Curtice Co. v. Estate of Jones*, 111 Neb. 166, 195 N.W. 930 (1923). See, also, *Tau Delta Phi, Tau Eta Chapter v. Gutierrez*, 89 Ill. App. 2d 25, 232 N.E.2d 205 (1967).

The defendant also argues, in the alternative, that specific performance shall not be granted because the purchase option contained in the initial lease did not exist when the lease was renewed. Defendant relies on *Kraski v. Banwell*, 200 Neb. 279, 263 N.W.2d 458 (1978), as authority for this contention.

In *Kraski* we held where a lease confers on the lessee an option to purchase the property at any time during the term of the lease, and the lease is thereafter extended in accordance with its terms, the option to purchase is also extended for the period of the extended term.

Although there are differences as well, the facts in this case are somewhat similar to *Kraski* because the lease in *Kraski* contained specific provisions that the extension is to be on the same terms and conditions as those in the "current" lease.

Here, the renewal option, paragraph XIX, is simply drafted and reads in part: "The tenant shall have an option to renew this lease for a term of five (5) years upon the *same terms and conditions as are provided herein*." (Emphasis supplied.) However,

paragraph XX, the purchase option, reads in part: "Said option shall be exercised at any time upon giving written notice to the landlord by certified mail, time being of the essence." In other words, the renewal provision does not contain any language to limit the purchase option to the "initial term" or the "original term," nor does the language specifically provide for the purchase option to exist in "the term of this lease, *or any extension hereof,*" as the renewal option was worded in the *Kraski* lease. (Emphasis supplied.)

We hold that absent words of express limitation, when a lease confers on the lessee an option to purchase the property at any time during the term of the lease, and the lease is thereafter extended upon the same terms and conditions, the option to purchase is also extended for the period of the extended term. The parties here had previously provided language in the purchase option section expressly limiting the purchase option to the initial term of the lease, but this language was specifically crossed out. This left a purchase option explicitly extended during the renewal period.

The judgment of the district court is reversed, and the cause is remanded with directions to enter judgment in accordance with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.